UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

SHARON CAMPBELL,

            Plaintiff,                 **DECISION AND ORDER**

     v.                                  1:13-CV-00438 EAW

NATIONAL FUEL GAS DISTRIBUTION
CORPORATION,

            Defendant.
_____

## INTRODUCTION

Plaintiff Sharon Campbell ("Plaintiff") filed this action on April 30, 2013, complaining of employment discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.* (Dkt. 1). The case was referred to United States Magistrate Judge Leslie G. Foschio for disposition of all non-dispositive motions, and to hear and report on dispositive motions for the consideration of this Court pursuant to 28 U.S.C. § 636(B)(1). (Dkt. 8). On November 3, 2014, Defendant National Fuel Gas Distribution Corporation ("Defendant") filed a motion for summary judgment. (Dkt. 28). Magistrate Judge Foschio filed a report and recommendation ("R&R") on July 26, 2016, recommending that this Court grant summary judgment. (Dkt. 58). Plaintiff filed timely objections to the R&R (Dkt. 61), and Defendant filed a response (Dkt. 62). Oral argument was held before the undersigned on November 22, 2016. (Dkt. 64).

- 1 -

This Court agrees with the R&R's recommendation that summary judgment should be granted in favor of Plaintiff, and for the reasons set forth below, Defendant's motion for summary judgment is granted.

## BACKGROUND

The factual background of this case is set forth in detail in the R&R. (*See* Dkt. 58 at 3-11). Familiarity with the R&R is assumed for purposes of this Decision and Order.

## DISCUSSION

### I. Standard of Review

A district court reviews any specific objections to a report and recommendation under a *de novo* standard. Fed. R. Civ. P. 72(b)(3); *see also* 28 U.S.C. § 636(b)(1)(C) ("A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made."). To trigger the *de novo* review standard, objections must "specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for each objection." L.R. Civ. P. 72(b); *see, e.g.*, *Molefe v. KLM Royal Dutch Airlines*, 602 F. Supp. 2d 485, 487 (S.D.N.Y. 2009). In the absence of a specific objection, the district court reviews for clear error or manifest injustice. *Singh v. N.Y. State Dep't of Taxation & Fin.*, 865 F. Supp. 2d 344, 348 (W.D.N.Y. 2011). Following review of the report and recommendation, the district judge "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).

Federal Rule of Civil Procedure 56 provides that summary judgment should be granted if the moving party establishes "that there is no genuine dispute as to any

material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The court should grant summary judgment if, after considering the evidence in the light most favorable to the nonmoving party, the court finds that no rational jury could find in favor of that party. *See Scott v. Harris*, 550 U.S. 372, 380 (2007) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)).

Once the moving party has met its burden, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . [T]he nonmoving party must come forward with specific facts showing that there is a *genuine issue for trial*." *Caldarola v. Calabrese*, 298 F.3d 156, 160 (2d Cir. 2002) (quoting *Matsushita Elec.*, 475 U.S. at 586-87). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. . . ." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

## II. <u>Disparate Treatment</u>

Magistrate Judge Foschio recommended that this Court grant summary judgment for Defendant on Plaintiff's disparate treatment claim. (*See* Dkt. 58 at 12-22). Plaintiff objects to this recommendation. (Dkt. 61-2 at 4-25). Plaintiff argues: (1) the R&R confused issues in finding that there was more than one adverse employment action (*id.* at 5-6); (2) the R&R's finding that other individuals were not sufficiently similarly situated to Plaintiff to show disparate treatment was erroneous (*id.* at 6-14); and (3) the R&R's finding that Plaintiff failed to show Defendant's legitimate reasons for firing Plaintiff were pretextual was erroneous (*id.* at 14-25).

A.   **Plaintiff Has Established a *Prima Facie* Case of Gender Discrimination**

"At the summary-judgment stage, properly exhausted Title VII claims are ordinarily analyzed under the familiar burden-shifting framework of *McDonnell Douglas Corp. v. Green*, [411 U.S. 792] (1973), and its progeny." *Mathirampuzha v. Potter*, 548 F.3d 70, 78 (2d Cir. 2008).

> At the first stage of the *McDonnell Douglas* analysis, the plaintiff bears the burden of establishing a *prima facie* case of discrimination by showing that: '1) [she] belonged to a protected class; 2) [she] was qualified for the position; 3) [she] suffered an adverse employment action; and 4) the adverse employment action occurred under circumstances giving rise to an inference of discriminatory intent.'

*Id.* (citation omitted). "The plaintiff's burden of proof at the *prima facie* stage 'is not onerous.'" *Id.* (citation omitted); *see, e.g., Cronin v. Aetna Life Ins. Co.*, 46 F.3d 196, 203-04 (2d Cir. 1995) ("[T]he showing the plaintiff must make as to the elements of the prima facie case in order to defeat a motion for summary judgment is '*de minimis*.'" (citation omitted)).

   1.   **Adverse Employment Action**

Here, it is undisputed that Plaintiff meets the first three prongs of a *prima facie* case. (*See* Dkt. 58 at 14-15; Dkt. 62 at 24). Plaintiff seizes on the R&R's statement that "Plaintiff maintains that she suffered a number of adverse employment actions. . . ," and argues that this statement results in a "confusion of the issues and a misapplication of those issues to the [*McDonnell Douglas*] framework." (Dkt. 61-2 at 5-6 (citing Dkt. 58 at 15)). Plaintiff, in fact, claims that she was subject to only one adverse employment action—her termination. Both parties agree that this is the only adverse employment

action. (*See id.*; Dkt. 62 at 25). Indeed, the R&R recognizes this in finding that there is no dispute regarding the first three prongs. (Dkt. 58 at 14-15). Contrary to what Plaintiff claims, the misstatement as to the number of adverse employment actions does not "taint the rest" of the Magistrate Judge's analysis. (*See* Dkt. 61-2 at 6). Magistrate Judge Foschio found that Plaintiff had established the third prong of a *prima facie* case. The parties, the R&R, and this Court agree on that point.

### 2. Similarly Situated Individuals

Plaintiff next argues that the Magistrate Judge's recommendation as to the fourth prong "applies far too strict a standard of a similarly situated analysis, requiring identicality when similarly is all that is required. . . ." (*Id.*). Plaintiff asserts that two similarly situated males were treated differently than she was, and, as such, the circumstances give rise to an inference of discriminatory intent sufficient to satisfy the fourth prong of a *prima facie* case of discrimination. (*Id.* at 6-14).

To establish the fourth element of a *prima facie* case, a plaintiff may point to evidence that she was treated differently than similarly situated persons outside her protected class. *Shumway v. United Parcel Serv., Inc.*, 118 F.3d 60, 63-64 (2d Cir. 1997); *see also Abdu-Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 468 (2d Cir. 2001) (holding that a plaintiff may, but is not required to, show disparate treatment to establish the fourth prong of a *prima facie* discrimination claim). "To be 'similarly situated,' the individuals with whom [the plaintiff] attempts to compare herself must be similarly situated in all material respects." *Shumway*, 118 F.3d at 64. This does not mean that they must be similarly situated in all respects. *McGuinness v. Lincoln Hall*, 236 F.3d 49, 53 (2d Cir.

2001). "A plaintiff is not obligated to show disparate treatment of an *identically* situated employee." *Id.* at 54; *see, e.g., Ruiz v. Cty. of Rockland*, 609 F.3d 486, 494 (2d Cir. 2010) ("The standard for comparing conduct requires a reasonably close resemblance of the facts and circumstances of plaintiff's and comparator's cases, rather than a showing that both cases are identical." (citation omitted)).

> In other words, where a plaintiff seeks to establish the minimal prima facie case by making reference to the disparate treatment of other employees, those employees must have a situation sufficiently similar to plaintiff's to support at least a minimal inference that the difference of treatment may be attributable to discrimination.

*McGuinness*, 236 F.3d at 54. "An employee is similarly situated to co-employees if they were (1) 'subject to the same performance evaluation and discipline standards' and (2) 'engaged in comparable conduct.'" *Ruiz*, 609 F.3d at 493-94 (citation omitted). Individuals are not similarly situated where there are "so many distinctions between the plaintiff's situation and theirs that the defendant's treatment of those employees ha[s] no logical relevance to the plaintiff's claims." *McGuinness*, 236 F.3d at 54. "[T]he fact that one comparator (who had been treated differently from the plaintiff) had committed fewer infractions than had the plaintiff d[oes] not in itself mean that he could not be a comparator." *Matusick v. Erie Cty. Water Auth.*, 757 F.3d 31, 54 (2d Cir. 2014).

"Whether two employees are similarly situated ordinarily presents a question of fact for the jury." *Graham v. Long Island R.R.*, 230 F.3d 34, 39 (2d Cir. 2000). "This rule is not absolute, however, and a court can properly grant summary judgment where it is clear that no reasonable jury could find the similarly situated prong met." *Harlen Assocs. v. Inc. Vill. of Mineola*, 273 F.3d 494, 499 n.2 (2d Cir. 2001). Only in a rare case

can the issue be determined as a matter of law. *Woods v. Newburgh Enlarged City Sch. Dist.*, 288 F. App'x 757, 760 (2d Cir. 2008).

Here, Plaintiff admits that her meter-reading reports did not "accurately reflect the times when [she] read or attempted to read the meters." (Dkt. 33 at ¶ 79). Plaintiff also admits misusing company time by making unauthorized personal stops at her home, her mother's home, a Tim Hortons, and OfficeMax during the workday. (*Id.* at ¶¶ 77, 86-91). Defendant contends that when confronted with the falsification of her timesheet and her unauthorized personal stops, Plaintiff lied to her supervisor, Assistant General Foreman Russell Jandreau ("Jandreau"). (Dkt. 62 at 9). Plaintiff's essential argument is that her falsification and making of personal stops were routine and commonplace, and those infractions warranted, at most, a verbal or written warning, not termination. (*See* Dkt. 33 at ¶¶ 78, 117-24). Plaintiff asserts that she "was the only person to be fired for allegations of misuse of company time and falsification of records under Mr. Jandreau and she was female, while men who engaged in the same conduct were treated in a way that prevented them from being fired." (Dkt. 61-2 at 3).

Plaintiff points to two male employees who she claims were similarly situated but treated differently than she was: Timothy Hacic ("Hacic") and Jerry King ("King"). (Dkt. 61-2 at 11-13). Both Hacic and King were also supervised by Jandreau. (Dkt. 58 at 17). The R&R found that neither Hacic nor King was similarly situated to Plaintiff. (Dkt. 58 at 17).

Hacic, like Plaintiff, made a personal stop during work hours. (Dkt. 61-2 at 11; Dkt. 62 at 10). During Hacic's personal stop, he was involved in a car accident, which he

immediately reported to Defendant. Thereafter, Hacic "received a five-day unpaid suspension for making a personal stop. . . ." (Dkt. 58 at 17; *see, e.g.*, Dkt. 28-13 at ¶ 23). Defendant argues that Hacic's situation is so factually different from Plaintiff's—because Hacic did not falsify his timesheet or lie after the incident—that Plaintiff failed to establish a *prima facie* case. While the Court believes that the question is a close call, as evidenced by the R&R's conclusion that Hacic was not similarly situated, this Court concludes that for purposes of the minimal burden required to establish a *prima facie* case, the fourth prong of the test could be satisfied by reliance on Hacic as a similarly situated employee.

Plaintiff's and Hacic's situations are factually different. But the differences are not so stark so as to preclude reliance on Hacic to establish Plaintiff's *prima facie* case. Both Plaintiff and Hacic misused company time by doing personal errands during the workday. The consequences for Hacic, a male, were far less than those for Plaintiff. Strict similarity between the situations is not required. There are not "so many distinctions" between Plaintiff and Hacic that Defendant's treatment of Hacic has no logical relevance to her claims. *See McGuinness*, 236 F.3d at 54. The facts are close enough to give rise to a minimal inference of discrimination. *See Graham*, 230 F.3d at 38 ("[T]he standard for comparing conduct requires a reasonably close resemblance of the facts and circumstances of plaintiff's and comparator's cases. . . ."). Plaintiff has made the *de minimis* showing required to establish a *prima facie* case.

Contrastingly, Plaintiff's situation is so factually dissimilar to King's that King is not a similarly situated individual. Plaintiff argues that King misused company time and

falsified his timesheets, but that King was not terminated for such offenses. (Dkt. 42 at 10; Dkt. 61-2 at 12). King was accused by "a member of the public" of being in a location other than what was on his timesheets, suggesting that King misused company time and falsified his timesheets. (*See* Dkt. 55 at ¶ 17). However, unlike Plaintiff (and Hacic), the allegations against King were never corroborated. (*Id.*). Thus, there was no basis on which to discipline King, because Defendant "could not confirm whether [he] misused work time or falsified timesheets."[1] (*Id.*).

Plaintiff's situation—in which she was personally observed by her supervisor misusing company time (*see* Dkt. 28-5 at 35), and then submitted falsified timesheets to cover up that misuse of time—is so factually different from King's that no reasonable jury could find that King and Plaintiff were similarly situated.

### B. Defendant has Shown a Legitimate Non-Discriminatory Reason for Terminating Plaintiff's Employment

Under the *McDonnell Douglas* framework, "[i]f the plaintiff successfully establishes a *prima facie* case, 'the burden then must shift to the employer to articulate some legitimate, nondiscriminatory reason for the adverse employment action.'" *Walsh v. N.Y.C. Hous. Auth.*, 828 F.3d 70, 75 (2d Cir. 2016) (quoting *United States v. Brennan*, 650 F.3d 65, 93 (2d Cir. 2011)). Defendant asserts that its legitimate, non-discriminatory reasons for firing Plaintiff are that she: (1) misused company time; (2) falsified her

---

[1] The Court notes that Plaintiff, like King, was the subject of an unsubstantiated report from the public. A member of the public alleged that Plaintiff was at her mother's house drinking alcohol during the workday in June 2011. (Dkt. 33 at ¶ 105). Plaintiff was not disciplined, but simply told that she was not to visit her mother's house during the workday. (*Id.* at ¶ 106).

timesheet; and (3) lied to her supervisor when confronted with misusing time and falsifying her timesheet. (Dkt. 62 at 8-9). The R&R found, and Plaintiff does not challenge, that Defendant has put forth legitimate, non-discriminatory reasons for terminating Plaintiff. (*See* Dkt. 58 at 19 ("[T]he undisputed facts show that Defendant had legitimate, non-discriminatory reasons for terminating Plaintiff's employment."); Dkt. 62-1 at 14 ("Just because an employer sets forth a legitimate, non-discriminatory reason [for termination], *like Defendant has here*, that does not end the analysis." (emphasis added))).[2]

Defendant has set forth legitimate, non-discriminatory reasons for terminating Plaintiff, and the Court finds no error with respect to the R&R on this point.

### C. Plaintiff has Not Established that Defendant's Legitimate Reasons for Terminating Her Were Pretextual

If the employer can show legitimate, non-discriminatory reasons for the adverse employment action, "the plaintiff's admissible evidence must show circumstances that would be sufficient to permit a rational finder of fact to infer that the defendant's employment decision was more likely than not based in whole or in part on discrimination." *Walsh*, 828 F.3d at 75 (citation omitted). "In other words, to survive summary judgment, a plaintiff must come forward with evidence to support the conclusion that the defendant's proffered reason is a pretext for discrimination." *Forte v. Liquidnet Holdings, Inc.*, ___ F. App'x ___, 2017 WL 104316, at *2 (2d Cir. Jan. 10, 2017).

---

[2] Additionally, Plaintiff's union chose not to arbitrate Plaintiff's termination because "it [was] likely an arbitrator would find that [Defendant] had just cause to discipline [Plaintiff], and that discharge was not an inappropriate discipline." (Dkt. 28-9 at 16; *see, e.g.*, Dkt. 51 at ¶ 6).

"[T]he employer will be entitled to summary judgment . . . unless the plaintiff can point to evidence that reasonably supports a finding of prohibited discrimination." *James v. N.Y. Racing Ass'n*, 233 F.3d 149, 154 (2d Cir. 2000); *see, e.g., Garcia v. Hartford Police Dep't*, 706 F.3d 120, 127 (2d Cir. 2013) ("When the defendant offers a legitimate, nondiscriminatory reason for the adverse employment action, the burden is on the plaintiff to point to evidence that reasonably supports a finding of prohibited discrimination; otherwise, the defendant is entitled to summary judgment."). The plaintiff "must be afforded the 'opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." *Riley v. HSBC USA, Inc.*, 784 F. Supp. 2d 181, 201-02 (W.D.N.Y. 2011) (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000)). "The task . . . is to examine the entire record and . . . make the case-specific assessment as to whether a finding of discrimination may reasonably be made." *Zimmerman v. Assocs. First Capital Corp.*, 251 F.3d 376, 382 (2d Cir. 2001); *see, e.g., Walsh*, 828 F.3d at 76 (stating that the court must view the evidence as a whole).

In making this demonstration, the plaintiff cannot rely on conclusory, unsupported allegations of discrimination. *Mattera v. JPMorgan Chase Corp.*, 740 F. Supp. 2d 561, 575 (S.D.N.Y. 2010). "However, the plaintiff is not required to show that the employer's proffered reasons were false or played no role in the employment decision, but only that they were not the only reasons and that the prohibited factor was at least one of the 'motivating' factors." *Cronin v. Aetna Life Ins. Co.*, 46 F.3d 196, 203 (2d Cir. 1995). A

plaintiff is not required to adduce additional evidence from that relied upon in support of her *prima facie* case. *Id.*

Here, Plaintiff, as described above, has shown a *de minimis* inference of discrimination. However, the record before the Court does not rise about a minimal showing sufficient to support a *prima facie* case, and it does not overcome the legitimate reasons offered by Defendant so as to establish pretext. As such, summary judgment for Defendant is appropriate.

There is no evidence in the record that the individuals who actually made the decision to terminate Plaintiff acted discriminatorily. Plaintiff admits as much. (Dkt. 61-2 at 20 (conceding that Plaintiff was "fired *entirely* due to [Jandreau's] active involvement in the investigation and information sharing" (emphasis added)). Defendant's Chief Safety Officer and Senior Vice President James Ramsdell ("Ramsdell") made the decision to terminate Plaintiff's employment. (Dkt. 28-12 at ¶ 5; *see, e.g.*, Dkt. 56 at 4). Defendant's Labor Relations Manager Keith Richards ("Richards") recommended to Ramsdell that Plaintiff be fired based on information he learned from Jandreau. (Dkt. 56 at 3-4). Jandreau—who Plaintiff claims reported her actions to Richards knowing that termination would result (Dkt. 61-2 at 23)—neither terminated Plaintiff, nor made any recommendation that she should be terminated. (Dkt. 28-13 at ¶ 8 ("Mr. Jandreau did not make—and his report did not include—any recommendation regarding the appropriate discipline for Plaintiff's conduct."); Dkt. 56 at 2 (same)). Richards informed Plaintiff of her termination at a meeting on February 16,

2012. (Dkt. 56 at 4). Plaintiff makes no allegations that Ramsdell or Richards acted with discriminatory intent.

Plaintiff relies on the cat's paw theory of liability to overcome the fact that the individuals who made the decision to terminate Plaintiff's employment did not act with discriminatory intent. (Dkt. 61-2 at 22-25). Plaintiff's essential argument is that she was reported to senior management for misusing company time and falsifying her timesheets by Jandreau, and that Jandreau knew both: (1) that this conduct was common, and (2) that by reporting Plaintiff to senior management, she would be severely disciplined. (*See* Dkt. 33 at ¶¶ 179, 209; Dkt. 61-2 at 23-24). According to Plaintiff, by reporting her, Jandreau used senior management's non-discriminatory reaction to Plaintiff's misdeeds as a way to further Jandreau's discriminatory intent. (*See* Dkt. 33 at ¶¶ 184-87).

Under the cat's paw theory, "if a supervisor performs an act motivated by . . . animus that is intended by the supervisor to cause an adverse employment action, and if that act is a proximate cause of the ultimate employment action, then the employer is liable. . . ." *Staub v. Proctor Hosp.*, 562 U.S. 411, 422 (2011); *see, e.g., Vasquez v. Empress Ambulance Serv., Inc.*, 835 F.3d 267, 272 (2d Cir. 2016) ("[T]he 'cat's paw' metaphor now 'refers to a situation in which an employee is fired or subjected to some other adverse employment action by a supervisor who himself has no discriminatory motive, but who has been manipulated by a subordinate who does have such a motive and intended to bring about the adverse employment action.'" (quoting *Cook v. IPC Intern. Corp.*, 673 F.3d 625, 628 (7th Cir. 2012))).

> [A]n employer who, non-negligently and in good faith, relies on a false and malign report of an employee who acted out of unlawful animus cannot, under this "cat's paw" theory, be held accountable for or said to have been "motivated" by the employee's animus. And, of course, an employer who negligently relies on a low-level employee's false accusations in making an employment decision will not be liable under Title VII unless those false accusations themselves were the product of discriminatory or retaliatory intent. . . . Only when an employer in effect adopts an employee's unlawful animus by acting negligently with respect to the information provided by the employee, and thereby affords that biased employee an outsize role in its own employment decision, can the employee's motivation be imputed to the employer and used to support a claim under Title VII.

*Vasquez*, 835 F.3d at 275.

Here, information Jandreau provided to senior management provided the basis for Ramsdell and Richards' decision to terminate Plaintiff. (Dkt. 33-3 at 28). However, Plaintiff has failed to establish that Jandreau was motivated by discriminatory intent. Although it is quite clear that Jandreau targeted Plaintiff by surreptitiously surveilling her on January 26, 2014, (*see* Dkt. 28-2 at 8-9 (stating that Jandreau used GPS to find Plaintiff's location, and that Jandreau then "observed" Plaintiff making personal stops)), there is no evidence that he did so *because of Plaintiff's gender* rather than for some other reason.

Plaintiff claims that Jandreau treated her and "other women . . . differently through his actions." (*Id.* at ¶ 148; *see, e.g.*, *id.* at ¶¶ 155-56). This claim lacks support in the record. Plaintiff admits that Jandreau never said or did anything discriminatory towards her while she was working for Defendant. (Dkt. 33 at ¶ 147 ("Jandreau did not say anything overtly discriminatory to me.")). Plaintiff states that the basis for thinking that she was discriminated against because of her gender was "just a feeling." (Dkt. 28-4 at

61). Plaintiff alleges only that Jandreau ignored her, and treated her "as though [she] was not even there." (*Id.* at ¶ 116).

One woman supervised by Jandreau testified that he was a "tough supervisor," but that he was not any tougher on women than he was on men. (Dkt. 54 at 58). Another woman testified that Jandreau was a "good" supervisor. (*Id.* at 79). Plaintiff's only purported evidence to show actual gender discrimination by Jandreau himself is an unsubstantiated, third-party report that women tried to transfer out of Jandreau's department. (*See* Dkt. 34 at ¶ 9). The assertion lacks any corroboration, such as a sworn statement from a woman who sought such a transfer away from Jandreau.

Plaintiff also points to two affidavits in which Defendant's former employees state, "[t]hroughout my employment at [Defendant], I have witnessed men being treated more favorably than women." (Dkt. 34 at ¶ 5; Dkt. 36 at ¶ 5). Neither employee asserts that they witnessed *Jandreau* treating men more favorably than women, only that within the company there seemed to be differential treatment between employees of different genders. (*See* Dkt. 34; Dkt. 36).

Plaintiff relies heavily on comparisons to Hacic and King to show, circumstantially, discriminatory intent by Jandreau. As noted above, King is not similarly situated such that his non-punishment even establishes a *de minimis* inference of discrimination. And although Hacic's treatment is sufficiently similar to meet Plaintiff's minimal burden to establish a *prima facie* case, it is not sufficient to permit a rational finder of fact to infer that Jandreau's actions were motivated by gender animus.

Plaintiff admits to misusing company time and filing a falsified timesheet. (Dkt. 28-4 at 43-44, 46; Dkt. 33-1 at 34-39, 42; Dkt. 61-2 at 2).[3] Hacic, as noted above, misused company time. However, Hacic, unlike Plaintiff, did not submit a falsified timesheet; indeed, Hacic immediately reported his accident and, consequently, his misuse of time.

Additionally, there is at least one similarly situated individual whose adverse employment outcome cuts against a finding that Jandreau was motivated by gender animus. Lori Mee ("Mee"), a female, was supervised by Jandreau, like Plaintiff. (Dkt. 55 at ¶ 19). Mee "was caught falsifying records," and misusing her company phone.

---

[3] Defendant contends that Plaintiff also lied when confronted about the falsified timesheets, a proposition to which Plaintiff objects. (*See* Dkt. 41 at 7 ("Plaintiff did not lie when she said [her timesheets] were accurate.")). Defendant points to Jandreau's sworn affidavit in which he asserts: "Plaintiff was asked [during a January 26, 2012, meeting] if the times on her timesheet were correct with respect to both the completion times and the location, and she responded 'yes.'" (Dkt. 28-10 at ¶ 32; *see, e.g.*, Dkt. 28-6 at 8; Dkt. 28-11 at 7; *see also* Dkt. 28-6 at 6 (stating, in deposition testimony, that Plaintiff "initially" denied having made personal stops during company time); Dkt. 28-6 at 8 (stating that Plaintiff "gave different versions of where she was")). Plaintiff allegedly persisted in stating that her timesheets were accurate when questioned about specific entries. (Dkt. 28-10 at ¶ 33). Even after being informed that Jandreau had observed her making personal stops on company time, Plaintiff maintained that her timesheets were accurate. (*Id.* at ¶ 35; *see, e.g.*, Dkt. 28-11 at 7). Post-termination, Plaintiff "maintained that she never stopped working on January 26, 2012, even though she had been observed making personal stops at times when her timesheet stated she was working." (Dkt. 56 at 5). Although Plaintiff did, at some point, admit to misusing company time, Defendant claims Plaintiff lied when she said that her timesheets were accurate and they were, in fact, not accurate.

In response, Plaintiff asserts that during an interview with Jandreau and her union representative she was "up front" about her personal stops during the January 26, 2012, meeting, and that Jandreau did not allow her to explain herself. (Dkt. 33 at ¶¶ 128-30). This is an issue of fact not properly resolved on summary judgment. However, even without a resolution of this disputed issue, the Court is in a position to resolve the motion based on the undisputed facts that do not establish Jandreau's discriminatory intent.

(*See id.*). For these infractions, Mee was given a written warning, but not terminated. (*Id.*). Mee's conduct and discipline is similar to that of Hacic. Unlike Plaintiff, Mee did not misuse company time.[4]

The Court finds that even viewed in the light most favorable to Plaintiff, Plaintiff has not met her burden of establishing that Defendant's legitimate reasons for terminating her were pretextual. It should be noted, again, that Plaintiff acknowledges that she was never subject to overt discrimination by Jandreau. Jandreau was a tough supervisor and may have ignored Plaintiff, but this, standing alone, is not sufficient to divine discriminatory intent. Plaintiff's "feeling" that Jandreau did not like women is similarly insufficient to establish intent to discriminate. And even if Plaintiff is correct that "no supervisor other than [Jandreau] would have turned Plaintiff in to his superiors" for her conduct (Dkt. 41 at 12), that does not demonstrate that Jandreau was motivated by discriminatory intent, rather than for some other reason.

The record before the Court, viewed as a whole, does not allow for the reasonable inference that Jandreau was biased against Plaintiff because of her gender. Reading every fact in Plaintiff's favor, the best she can establish is that Jandreau did not like her, and that he targeted her for termination by reporting her for violating company policies which were routinely ignored. Plaintiff's allegations that Jandreau discriminated against her *because she is a woman* are nothing more than conjecture. No reasonable jury could

---

[4] Defendant also points to a number of other allegedly similarly situated individuals who were not supervised by Jandreau. As Jandreau's discriminatory intent is the sole issue under the cat's paw theory of liability, outcomes for those other individuals are not material to the Court's determination.

find by a preponderance of the evidence that Jandreau acted with discriminatory animus. Therefore, because Plaintiff cannot establish Jandreau's discriminatory intent with any reasonable probability, summary judgment is appropriate. *See Bickerstaff v. Vasser Coll.*, 196 F.3d 435, 450 (2d Cir. 1999) (finding inappropriate the imputation of employer liability for discrimination where the evidence did not allow for any reasonable inference of intent to discriminate).

Further, even if Jandreau was motivated by gender animus, Plaintiff has not put forth any facts which could establish that Defendant acted negligently or in bad faith. *See Vasquez*, 835 F.3d at 275. Plaintiff argues that Defendant relied solely on Jandreau's report in making the determination to fire Plaintiff, suggesting negligence. (Dkt. 61-2 at 24). On this point there is no issue of material fact—contrary to Plaintiff's assertion, Defendant did not rely solely on Jandreau's report. Defendant, through Richards, completed an independent investigation into the facts in Jandreau's report before terminating Plaintiff. Richards' investigation included: reviewing Jandreau's report; reviewing Plaintiff's admittedly falsified January 26, 2012, timesheet; discussing the situation with Jandreau, Defendant's Assistant Vice President Jeff Hart, and Defendant's Assistant Superintendent Mike Rodgers; and meeting with Plaintiff on February 16, 2012. (Dkt. 56 at 2-4). During the meeting, Plaintiff admitted that it "was not the first time [she] had engaged in" similar conduct. (*Id.*). Thus, Plaintiff cannot establish the cat's paw theory of liability based on Defendant's negligence. *See Lobato v. N.M. Env't Dep't*, 733 F.3d 1283, 1295 (10th Cir. 2013) ("In short, an employer is not liable under a [cat's paw] theory if the employer did not rely on any facts from the biased subordinate in

ultimately deciding to take an adverse employment action—even if the biased subordinate first alerted the employer to the plaintiff's misconduct."); *see also Staub*, 562 U.S. at 421 ("[T]he supervisor's biased report may remain a causal factor if the independent investigation takes it into account *without determining* that the adverse action was, *apart from the supervisor's recommendation*, entirely justified." (emphasis added)).

Similarly, there is no information in the record suggesting bad faith by Defendant. Indeed, Plaintiff concedes that once management was made aware of her misdeeds "they had to fire Plaintiff." (Dkt. 61-2 at 23).

Plaintiff cannot establish either that Jandreau was motivated by gender animus, or that Defendant acted negligently or in bad faith. As there is no issue of material fact regarding cat's paw theory liability, summary judgment is appropriate.

### III. Hostile Work Environment

Magistrate Judge Foschio recommended granting summary judgment for Defendant on Plaintiff's hostile work environment claim. (Dkt. 58 at 22-27). Neither party objects to this recommendation. (*See* Dkt. 61-2; Dkt. 62). Indeed, at oral argument Plaintiff conceded that she did not challenge this portion of the R&R. (*See* Dkt. 64).

The Court has reviewed Magistrate Judge Foschio's recommendation as to Plaintiff's hostile-work-environment claim, and, finding no clear error or manifest injustice, adopts that portion of the R&R.

## CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment (Dkt. 28) is granted.

SO ORDERED.

_____
ELIZABETH A. WOLFORD
United States District Judge

Dated: May 11, 2017
       Rochester, New York